# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 02-20449 |
| | ) | |
| CRAIG PETTIES, et al. | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND DENYING DEFENDANT MARTIN LEWIS'S MOTION TO EXCLUDE EVIDENCE

Before the Court is Defendant Martin Lewis's ("Lewis") June 1, 2011 Motion to Exclude Evidence of the Defendant's Phone Calls. (ECF No. 1017 ("Mot. to Exclude").) The Motion was referred to Magistrate Judge Vescovo on June 7, 2011. (Order of Reference, ECF No. 1024.) Plaintiff the United States of America (the "Government") responded on September 6, 2011. (Govt.'s Resp. to Martin Lewis's Mot. to Exclude Evidence, ECF No. 1070 ("Resp.").) Lewis replied on October 31, 2011 (Reply to Govt.'s Resp. To Def.'s Previously Filed Mot. to Exclude Evidence of Def.'s Phone Calls, ECF No. 1143 ("Lewis's Reply")), and the Government responded to Lewis's Reply on November 2, 2011 (Govt.'s Resp. to Martin Lewis's Amended Mot. to Exclude Jail Calls, ECF No. 1145 ("Govt.'s Resp.").) Magistrate Judge Diane K. Vescovo conducted an evidentiary hearing on October 31,

2011, and issued her Report and Recommendation on December 1, 2011, giving Lewis and the Government until December 15, 2011, to object. (Report and Recommendation on Def.'s Mot. to Suppress, ECF No. 1167 ("Report").) Neither the Government nor Lewis has objected. For the following reasons, Lewis's Motion is DENIED.

I. Background

Lewis seeks to prevent the Government's use of "a series of recorded phone calls made by [] Lewis to various relatives and friends while incarcerated." (Mot. to Exclude 1.) Lewis initially contended that the Government had acquired those recordings pursuant to a grand jury subpoena, but the Government disclosed that it had not used a subpoena; it "received the phone calls from investigators," and merely "asked local authorities for a copy of the recordings." (Resp. 1.)

In his Reply, Lewis contends that he "was given no notice and no opportunity to object to the release of his phone calls," and that "[t]he material was not subjected to any review by the Shelby County Sherriff's Office to determine whether or not any of the material held any evidentiary value." (Lewis's Reply 2.) Lewis seeks to have the telephone calls excluded. (Id. 3.)

At the hearing, Carolyn Chambers ("Chambers") testified as a witness for the Government, and a recording of one of Lewis's telephone calls was entered into evidence. (Report 1.)

2

Chambers has worked at the Shelby County Sheriff's Department for fifteen years, and one of her duties has been to pull telephone recordings for evidence from the various correctional facilities in Shelby County. (Id. 2.) Chambers testified that before inmates can make calls, each inmate must enter a personal identification number, which lets law enforcement identify who made the call. (Id.) She testified that inmates are given multiple warnings that their conversations may be recorded or monitored and that they are notified that they can use a private, non-recorded telephone to speak with legal counsel. (Id. 2-3.) During booking, inmates are warned that their calls are recorded. (Id. 3.) Plastic sheets near the telephones and signs above the telephones warn inmates that their calls are recorded. (Id.) Each telephone call begins with a recording notifying inmates that their calls are subject to monitoring and that, if they would like to speak to an attorney, they can do so on a private, non-recorded telephone. (Id.)

Chambers testified that Lewis used another inmate's identification number to place several calls. (Id. 3.) Chambers was able to identify Lewis's telephone calls because he called the same numbers under both his personal identification number and another inmate's. (Id.) When Chambers listened to the calls to the same number, she recognized Lewis's voice. (Id. 4.) Chambers testified that she heard Lewis make several

threats to Marcus Brandon and that Lewis said he had just "exed" someone. (Id.)

## II. Review of Report and Recommendation

"It is well-settled that upon proper objection by a party, a district court must review de novo a magistrate judge's ruling on a motion to suppress." United States v. Quinney, 238 F. App'x 150, 152 (6th Cir. 2007) (citations omitted). The district court need not review—under a de novo or any other standard—those aspects of a magistrate judge's report and recommendation to which no specific objection is made. See Thomas v. Arn, 474 U.S. 140, 149-50 (1985); United States v. Robinson, 352 F. App'x 27, 28-29 (6th Cir. 2009).

## III. Analysis

Lewis contends that evidence of the telephone calls should be excluded because: 1) there was insufficient notice to inmates that the calls were recorded, and his right to privacy was violated; 2) he was not given an opportunity to consult with counsel before consenting to being recorded, which violated his Fifth and Sixth Amendment rights; and 3) the Government cannot establish that the recordings do not violate the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2150 et seq. ("Title III").

**A. Lewis's Fourth Amendment Rights Were Not Violated**

4

The Court understands Lewis's contention that he did not "waive his rights to privacy" to be an assertion that the recordings violated his rights under the Fourth Amendment. (Lewis's Reply 4.) To invoke the Fourth Amendment, a party must "demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable." Minnesota v. Carter, 525 U.S. 83, 88 (1998). Any expectation of privacy that Lewis might have is greatly diminished because "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." Hudson v. Palmer, 468 U.S. 517, 526 (1984). Given that background, Lewis has neither shown that he had an expectation of privacy nor that such an expectation was reasonable.

Lewis was aware that his telephone calls were subject to monitoring and recording. (Govt.'s Resp. 1.) Every telephone call begins with a warning advising the parties that the call is subject to monitoring and recording. Chambers testified about numerous warnings that inmates receive, including warnings during booking, warnings on plastic signs above the telephones, and recorded warnings that remind inmates before they place a call. (Report 3.) Lewis has failed to show that he had an expectation of privacy when, as an inmate, he was put on notice that his telephone calls were being recorded. "The notice that [Lewis] received is . . . sufficient to dispose of [his] Fourth

5

Amendment claims . . . as he had no reasonable expectation of privacy . . . . Where a facility provides some notice to inmates that calls may be monitored, the facility's practice of automatically taping . . . telephone calls of inmates . . . is not an unreasonable invasion of the privacy rights of pretrial detainees." United States v. Friedman, 300 F.3d 111, 123 (2d Cir. 2002) (internal quotations omitted); see also United States v. Laster, No. s1 06 Cr. 1064, 2007 U.S. Dist. LEXIS 74113, at *12 (S.D.N.Y. Sept. 28, 2007) ("[T]he taping of [a] [d]efendant's telephone calls [while in prison] did not violate his Fourth Amendment rights."). Even if Lewis "believed that his calls were private, no prisoner should reasonably expect privacy in his outbound telephone calls." United States v. Van Pocky, 77 F.3d 285, 290-91 (9th Cir. 1996). There was no violation of Lewis's Fourth Amendment rights. Smith v. Bradley, No. 94-5351, 1995 U.S. App. LEXIS 9759, at *9 (6th Cir. April 25, 1995); accord Thomas v. Wilbert, No. 09-4796, 2011 U.S. Dist. LEXIS 2347, at *15-16 (D. N.J. Jan. 11, 2011); United States v. Plummer, No. 2:05-cr-336, 2006 U.S. Dist. LEXIS 53479, at *6 (W.D. Pa. Aug. 2, 2006).

"Even if [Lewis] could establish a constitutionally protected reasonable expectation of privacy, the Government can still justify the recording if it can establish that one of the exceptions to the warrant requirement applies. Voluntary

6

consent is a well recognized exception to the warrant requirement." United States v. Muse, No. 2:05-cr-118, 2006 U.S. Dist. LEXIS 9056, at *9 (S.D. Ohio March 7, 2006). "When someone voluntarily participates in a telephone conversation knowing that the call is being intercepted, this conduct supports a finding of implied consent to the interception." United States v. Corona-Chavez, 328 F.3d 974, 978 (8th Cir. 2003).

Lewis knew that his telephone calls were being recorded. He used another person's personal identification number to place the call to Marcus Brandon in an effort to avoid being identified. (Govt.'s Resp. 6.) This ruse demonstrates that Lewis had no expectation of privacy and that he voluntarily participated knowing that his calls were being intercepted. An inmate who is "required to permit monitoring as a condition of using prison telephones" has consented to having calls monitored for the purpose of the Fourth Amendment. United States v. Hammond, 286 F.3d 189, 192 (4th Cir. 2002). Lewis's Fourth Amendment rights were not violated.

**B. Lewis's Fifth and Sixth Amendment Rights Were Not Violated**

Lewis contends that he "had no opportunity to consult with counsel with respect to whether or not he should consent to

7

being recorded." He asserts that this violates his Fifth and Sixth Amendment rights. (Lewis' Reply 4.)

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. A defendant "questioned by law enforcement officers after being 'taken into custody . . .' must first be 'warned that he has a right to remain silent, that any statement he does make may be used against him, and that he has a right to the presence of an attorney, either retained or appointed.'" Stansbury v. California, 11 U.S. 318, 322 (1994) (quoting Miranda v. Arizona, 384 U.S. 436, 444 (1966)). "It is the premise of Miranda that the danger of coercion results from the interaction of custody and official interrogation." Illinois v. Perkins, 496 U.S. 292, 297 (1990). "Said another way, Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." United States v. Korbe, No. 2:09-cr-05, 2010 U.S. Dist. LEXIS 70419, at *25 (W.D. Pa. July 14, 2010).

Lewis was not subject to express questioning; he spoke freely to parties of his choosing on the telephone without any involvement by law enforcement officers. He was not subjected to the functional equivalent of express questioning. "The 'functional equivalent' of express questioning [is] 'any words or actions on the part of the police . . . that the police

8

should know are reasonably likely to elicit an incriminating response from the suspect.'" Tolliver v. Sheets, 594 F.3d 900, 917 (6th Cir. 2010) (quoting Pennsylvania v. Muniz, 496 U.S. 582, 600-01 (1990)). Lewis has failed to cite anything the police did to elicit an incriminating response. He was on notice that his telephone calls were recorded, and he voluntarily placed calls to whom he wanted and discussed what he wanted. That Lewis may have made incriminating statements does not make his voluntary statements the product of police compulsion.

Lewis's Sixth Amendment rights were not violated. Lewis argues that he had "no opportunity to consult with counsel with respect to whether or not he should or should not consent to being recorded." (Lewis's Reply 4.) The Sixth Amendment right to counsel attaches "at all 'critical stages' of the criminal process." United States v. Marrero, 651 F.3d 453, 464 (6th Cir. 2011) (quoting United States v. Wade, 388 U.S. 218, 224 (1967)). Although a "pithy definition[]" does not exist to define a critical stage, Van v. Jones 475 F.3d 292, 311 (6th Cir. 2007), a critical stage is a moment when "defenses may be irretrievably lost, if not then and there asserted," or where counsel's assistance is "necessary to mount a meaningful defense." Id. at 312 (internal citations and quotations omitted). A critical stage occurs whenever "'substantial rights

of a defendant may be affected' during . . . [a] proceeding." United States v. Robles, No. 10-20344, 2011 U.S. App. LEXIS 21228, at *23 (5th Cir. Oct. 19, 2011) (quoting Burdine v. Johnson, 262 F.3d 336, 347 (5th Cir. 2001)).

Voluntary telephone calls in prison are not critical stages in a criminal proceeding. Lewis's substantial rights during a proceeding were not affected. He was not engaged in a judicial proceeding. As he notes, he was calling family and friends. (Lewis's Reply 1.) His assertion that he was denied the right to counsel is not well taken.

Lewis's reply may also be read to allege that his Sixth Amendment right to protection against self-incrimination was violated. The Supreme Court has held that "an accused is denied 'the basic protections' of the Sixth Amendment 'when there is used against him at trial his own incriminating words, which federal agents deliberately elicited from him after he had been indicted and in the absence of counsel.'" Fellers v. United States, 540 U.S. 519, 523 (2004) (quoting Massiah v. United States, 377 U.S. 201, 206 (1964)). The right to counsel attaches even to "'indirect and surreptitious interrogations' by covert government agents and informants." Ayers v. Hudson, 623 F.3d 301, 309 (6th Cir. 2010) (quoting United States v. Henry, 447 U.S. 264, 273 (1980)).

Lewis has not been subject to "indirect or surreptitious" interrogations. He knew that his conversations were being monitored and voluntarily made telephone calls. "The Sixth Amendment does not prevent the admission of a defendant's voluntary statements." United States v. Lentz, 419 F. Supp. 2d 820, 833 n. 32 (E.D. Va. 2005). "There is simply no factual basis upon which the Court can ascribe any conduct on the part of any government agent to deliberately draw information from [Lewis]." Korbe, 2010 U.S. Dist. LEXIS 70419, at *34. "[T]he Sixth Amendment is not violated when a passive listening device collects, but does not induce, incriminating comments." Henry, 447 U.S. at 276. There was no Sixth Amendment violation.

**C. The Recordings Do Not Violate Title III**

Lewis's final contention is that the "initial interception was not lawful and not consistent with any exceptions to Title III and without any formal process whatsoever." (Lewis's Reply 5.) Lewis's contention is not well taken.

Title III "generally regulates the government's interception of wire, oral, and electronic communications." ACLU v. NSA, 493 F.3d 644, 679 (6th Cir. 2007) (citing 18 U.S.C. §§ 2510-22). Title III "prohibit[s] all electronic surveillance and interceptions of oral and wire communications, except those specifically provided for in the Act." Blake v. Wright, 179 F.3d 1003, 1011 (6th Cir. 1999). An intercepted communication

11

is ordinarily inadmissible as evidence. 18 U.S.C. § 2515. Title III provides an exception where a "party to the communication . . . has given prior consent to such interception." 18 U.S.C. § 2511(2)(c). "[U]nder certain circumstances, prisoners are deemed to have given consent for purposes of Title III to the interception of their calls on institutional telephones." United States v. Workman, 80 F.3d 688, 693 (2d Cir. 1995).

The Government argues, and Lewis does not contest, that there were signs near the telephones that warned of monitoring and that every telephone call began with a warning advising the parties that they might be recorded. (Govt.'s Resp. 1.) Voluntarily placing a telephone call despite signs and a verbal warning constitutes implied consent to have the call recorded, and Title III is not violated. See United States v. Apostolopous, No. 04 CR. 1220, 2005 U.S. Dist. LEXIS 23005, at *4-5 (S.D.N.Y. Oct. 6, 2005) (finding defendant consented to wiretap when he used telephones despite large signs warning inmates that calls were recorded); United States v. Faulkner, 439 F.3d 1221, 1224 (10th Cir. 2006) (finding that a prisoner who places a telephone call with the knowledge that it is being recorded has consented to its recording); accord United States v. Moore, 452 F.3d 382, 386-87 (5th Cir. 2006); Muse, 2006 U.S Dist. LEXIS 9056, at *9; United States v. Kee, No. 98 CR 778,

2000 U.S. Dist. LEXIS 7962, at *3-4 (S.D.N.Y. June 12, 2000). There is no basis to exclude the fruits of a voluntary telephone call the Defendant made to non-counsel knowing that the call was being recorded.

**IV. Conclusion**

The Court ADOPTS the Report and Recommendation of the Magistrate Judge and DENIES the Motion to Exclude.

So ordered this 28th day of December, 2011.

    s/ Samuel H. Mays, Jr._____
    SAMUEL H. MAYS, JR.
    UNITED STATES DISTRICT JUDGE